## In the

## United States Court of Appeals

### For the Seventh Circuit

No. 07-3160

DENNIS EMERSON,

*Petitioner-Appellant,*

*v.*

FRANK SHAW, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 452—**Marvin E. Aspen**, *Judge.*

ARGUED SEPTEMBER 18, 2008—DECIDED JULY 30, 2009

Before EASTERBROOK, *Chief Judge*, and SYKES and
TINDER, *Circuit Judges*.

SYKES, *Circuit Judge.* Dennis Emerson is serving a term
of life imprisonment after a former Illinois governor
commuted his death sentence, which stems from a
murder he committed during an armed robbery.
Emerson has petitioned for a writ of habeas corpus
under 28 U.S.C. § 2254, claiming that his counsel at his
sentencing hearing was ineffective and that he should

be resentenced. He argues specifically that his counsel should have objected to the sentencing court's response to a question from the jury and also that his counsel should have offered the judge a more explicit answer to the jury's question. On postconviction review the Illinois Appellate Court rejected Emerson's arguments, and on habeas review the district court denied his petition. We affirm.

## I. Background

In 1979 Dennis Emerson and Richard Jackson, his brother, robbed Robert Ray and Ray's girlfriend, Delinda Byrd, at gunpoint. Emerson and Jackson then tied the victims' hands and feet, and Emerson stabbed Ray twice in the chest with a pair of scissors. Ray survived by playing dead. According to Ray's testimony, Emerson then approached Byrd and brought his hands down upon her body in a stabbing motion. Because Ray was playing dead, he did not look directly at the strike and therefore did not actually see Emerson stab Byrd. Emerson and Jackson then left the room and set fire to the building as they fled. Ray escaped, but Byrd died from a stab wound. Emerson was charged with the murder of Byrd, attempted murder of Ray, armed robbery of both victims, and arson.

This case arrives here with a long and complicated history in state and federal courts, most of which is not

relevant to this appeal.[1] Emerson was convicted in Illinois state court of murder, attempted murder, and armed robbery, and he was sentenced to death. *See People v. Emerson*, 606 N.E.2d 1123 (Ill. 1992), *cert. denied*, 507 U.S. 1037 (1993). Emerson later petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 based on a sentencing issue. The federal district court granted the petition and required resentencing. *United States ex rel. Emerson v. Gramley*, 883 F. Supp. 225 (N.D. Ill. 1995), *aff'd*, 91 F.3d 898 (7th Cir. 1996).

The Circuit Court of Cook County held a new sentencing hearing, which forms the basis of this appeal. The hearing focused on whether the State could prove a particular aggravating factor—murder in the course of armed robbery. Emerson's counsel maintained during closing argument that Emerson was ineligible for the death penalty because the State failed to prove that Emer-

---

[1] In Emerson's first trial, a jury convicted him on all charges, and Emerson was sentenced to death. On direct appeal the Illinois Supreme Court reversed the convictions and remanded for a new trial. *People v. Emerson*, 455 N.E.2d 41 (Ill. 1983). In 1985 Emerson was retried, again convicted on all counts, and again sentenced to death. The Illinois Supreme Court affirmed the convictions for murder, attempted murder, and armed robbery, affirmed the death sentence, but reversed the conviction for aggravated arson. *People v. Emerson*, 522 N.E.2d 1109 (Ill. 1987), *cert. denied*, 488 U.S. 900 (1988). The Illinois Supreme Court also upheld the dismissal of a postconviction petition filed in 1989. *People v. Emerson*, 606 N.E.2d 1123 (Ill. 1992), *cert. denied*, 507 U.S. 1037 (1993).

son "actually struck the fatal blow that led to Delinda Byrd's death." The court instructed the jury in relevant part:

> Before [Emerson] may be found eligible for a death sentence under the law, the State must prove the following propositions:
>
> First:     That [Emerson] was 18 years old or older at the time of the commission of the murder . . . ; and
>
> Second:    That the following statutory aggravating factor exists:
>
>> The murdered person was killed in the course of another felony if
>>
>> The murdered person was actually killed by [Emerson]; and
>>
>> In performing the acts which caused the death of the murdered person, [Emerson] acted with the intent to kill the murdered person or with the knowledge that his acts created a strong probability of death or great bodily harm to the murdered person; and
>>
>> The other felony was armed robbery.
>
> If you find from your consideration of all the evidence that the first and second propositions have been proved beyond a reasonable doubt, then [Emerson] is eligible for a death sentence.
>
> If you cannot unanimously find that both the first and second propositions have been proved beyond a

reasonable doubt, then [Emerson] is not eligible for a death sentence.

During deliberations the jury sent a note to the judge asking, "Do we unconditionally accept the previous judgments of guilty for murder, attempted murder and two counts of armed robbery as fact when evaluating this case or can we apply reasonable doubt to the prior guilty verdicts?" The court asked the parties for input on how it should respond. Defense counsel suggested that the jury be instructed as follows: "You are required to deliberate solely based on the evidence you have heard in this case in accordance with my instructions." The State proposed: "You have evidence before you that [Emerson] has been convicted of armed robbery, attempted murder and murder. You are to consider that evidence in the eligibility phase." The judge instead instructed the jury: "You have received the evidence and jury instructions. Please continue to deliberate." Neither side objected to this instruction. After further deliberation, the jury returned a finding that Emerson was eligible for the death penalty, and the court imposed the death sentence.

On direct appeal Emerson, represented by his sentencing counsel, argued that the sentencing court erred by not answering the jury's question. He claimed that there was a "strong likelihood" that "the jury failed to make its own determination at eligibility as to whether defendant had actually killed Byrd because it assumed that this issue had already been determined at trial." *People v. Emerson*, 727 N.E.2d 302, 333 (Ill. 2000). Affirming

Emerson's death sentence, the Supreme Court of Illinois held that Emerson waived this argument by failing to object to the court's response or offer a substantively different proposal. Specifically, the supreme court stated, "[W]e are unable to discern any significant difference between the answer suggested by defense counsel and the answer the circuit court provided to the jury." *Id.*

Emerson then sought postconviction relief in Illinois courts, claiming ineffective assistance of counsel.[2] The Illinois Appellate Court analyzed Emerson's claim under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The court held that counsel was not ineffective in suggesting that the judge instruct the jury to continue to deliberate based on the court's original instructions, and that in any event, "there is no reasonable probability that, absent his counsel's errors, defendant would not have been sentenced to death." The

---

[2] Emerson's ineffective-assistance-of-counsel claim also arrives in a complicated manner. While Emerson's postconviction petition was pending in Illinois courts, then-Governor George Ryan commuted Emerson's death sentence to life in prison. Under Illinois law, a sentence of life imprisonment is lawful only if a jury concludes that an aggravating factor exists. *See* 730 ILL. COMP. STAT. 5/5-8-1(a)(1)(a) to (a)(1)(b) (capping the sentence for first-degree murder at 60 years unless an aggravating factor is found); *People v. Mata*, 842 N.E.2d 686, 691 (Ill. 2005). In light of *Mata*, the Illinois Supreme Court allowed Emerson to challenge his life sentence in state court based on the jury's finding that the aggravating factor—murder in the course of armed robbery—existed.

court therefore affirmed Emerson's sentence. The Illinois Supreme Court denied leave to appeal.

Emerson then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, which the district court denied. Analyzing Emerson's claim under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), the district court held that the Illinois Appellate Court's judgment was neither contrary to, nor an unreasonable application of, *Strickland*. Emerson appealed.

## II. Discussion

Emerson is not entitled to federal habeas relief under AEDPA unless he shows that the Illinois Appellate Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A court's decision is an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* For Emerson to prevail on this latter prong, he must show that the Illinois Appellate Court's decision was "so errone-

ous as to be objectively unreasonable." *Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006). In other words, the court's decision must "l[ie] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

Emerson's ineffective-assistance-of-counsel claim is controlled by "clearly established Federal law," namely, the legal principles set forth in *Strickland v. Washington*. *Strickland*'s familiar two-step process for determining whether a counsel's assistance fell below Sixth Amendment standards is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

Under the *Strickland* standard on direct review, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance." *Id.* On habeas review the bar is even higher. Emerson "must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance . . . . [H]e must show that the [Illinois Appellate Court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 698-99; *see also Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) ("*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard.").

Emerson does not argue that the Illinois court's decision was "contrary to" Supreme Court precedent. He argues instead that the Illinois court unreasonably applied *Strickland* in rejecting his ineffective-assistance-of-counsel claim. We review de novo the district court's denial of Emerson's petition. *Julian v. Bartley*, 495 F.3d 487, 491 (7th Cir. 2007).

Emerson first argues that his counsel was deficient because he did not request that the judge clarify that the jury was asked to determine whether the State had proved beyond a reasonable doubt that Emerson actually killed Byrd. In other words, while Emerson concedes that the original instruction was legally correct, he contends that the jury was nonetheless confused. He argues that his counsel should have, but did not, ask the judge to try to clear up that confusion, and that this omission deprived him of his constitutional right to effective assistance of counsel. The Illinois Appellate

Court rejected this argument. The court concluded that the judge's original instructions fairly encompassed what Emerson submitted his counsel should have said. The court further held that even if counsel were ineffective, "there is no reasonable probability that, absent his counsel's errors, defendant would not have been sentenced to death."

Under our deferential review, the Illinois court's application of *Strickland* was not objectively unreasonable. We have repeatedly held that judges are well within their discretion to refer a jury back to the original instructions when the jury evinces possible confusion. *E.g.*, *United States v. Span*, 170 F.3d 798, 802 (7th Cir. 1999); *United States v. Beverly*, 913 F.2d 337, 351-52 (7th Cir. 1990); *United States v. Mealy*, 851 F.2d 890, 901-02 (7th Cir. 1988); *accord Weeks v. Angelone*, 528 U.S. 225, 234 (2000).[3] As long as the original instructions accurately and understandably state the law, referring a jury back to those instructions can be the most prudent course for at least two reasons. First, jury instructions often come from pattern instructions that have been analyzed by appellate judges in actual cases. *See, e.g.,* Ill. Pattern Jury Instr., Crim. 7B.06 (defining death penalty eligibility); *see also People v. Kuntu*, 752

---

[3] *Bollenbach v. United States*, 326 U.S. 607 (1946), which Emerson cites, is not to the contrary. In that case, the Supreme Court reversed a conviction where the judge responded to the jury's questions in a manner that was "palpably erroneous." *Id.* at 611. Here, Emerson concedes that the jury instructions were accurate, and the judge's reference to these instructions was proper. *See Weeks*, 528 U.S. at 231 (distinguishing *Bollenbach* on these grounds).

N.E.2d 380, 397 (Ill. 2001) (holding that a substantially similar verdict form correctly stated the law and clearly required the jury to find that defendant actually killed the victim). Deviating from these instructions creates the needless risk of reversible error. Second, jury questions can be ambiguous. In this case, for example, there are at least two plausible interpretations of the jury's question: It is possible, as Emerson contends, that the jury was confused over whether it had to find beyond a reasonable doubt that Emerson actually killed Byrd. Alternatively, and more likely, the jury was confused over whether it had to retry Emerson for the underlying crimes. No matter which interpretation is correct, directing the jury back to the correct instructions answered both questions.[4]

Emerson's attorney essentially suggested that the judge follow this generally accepted response to jury questions of this sort; this cannot amount to deficient performance under *Strickland*. We hold that the Illinois Appellate Court did not unreasonably apply *Strickland* in concluding that Emerson's counsel was not ineffective.

We also conclude that the Illinois court did not unreasonably hold that Emerson failed to satisfy *Strickland*'s

---

[4]  To the extent Emerson argues that the jury was also confused about whether it had to retry Emerson on all charges, Emerson cannot show prejudice. The jury's finding that Emerson was death-eligible strongly suggests that it also believed that Emerson was guilty on the underlying counts.

prejudice requirement. *See* 466 U.S. at 687. Demonstrating prejudice in this case requires at least two steps, and Emerson cannot satisfy either. First, there must be a reasonable probability that "effective" counsel could have altered the judge's response to the jury's question. Otherwise, the sentencing hearing would have played out the same way. This is a difficult showing considering that the jury was properly instructed and the sentencing court properly exercised its discretion in instructing the jury to refer back to the original instructions. Second, and even more difficult, Emerson must show that if the judge gave the response Emerson now suggests should have been given, it is reasonably probable that the jury would have found that the aggravating factor did not exist—that is, that Emerson did not actually kill Byrd. Ray testified that he saw Emerson approach Byrd right after Emerson stabbed him with scissors, and also that he saw Emerson bring his hands violently down upon Byrd. The evidence also established that Byrd died from stab wounds. Based on these facts, the Illinois court's decision regarding the lack of prejudice does not "l[ie] well outside the boundaries of permissible differences of opinion." *Hardaway*, 302 F.3d at 762. Accordingly, Emerson's first argument fails under either prong of *Strickland*.

Emerson also makes a second, conclusory argument that had his attorney objected to the court's instruction, he could have argued that the judge erred under *People v. Childs*, 636 N.E.2d 534 (Ill. 1994), and the appellate court could have required resentencing. The Illinois Appellate

Court rejected Emerson's argument by concluding that Emerson would have been sentenced to death even absent his counsel's error.

*Childs* involved a defendant on trial for armed robbery and murder. The jury was instructed on the felony-murder rule, but the trial court did not submit a verdict form on felony murder. During deliberations the jury asked, "Can the defendant be guilty of armed robbery and voluntary or involuntary manslaughter or must murder be the only option with armed robbery?" *Childs*, 636 N.E.2d at 538. The judge advised the jury to continue to deliberate. The Illinois Supreme Court noted that under Illinois law, "[a] trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law." *Id.* at 539. However, the supreme court required retrial in *Childs* because it concluded that the jury's question "manifested juror confusion on a substantive legal issue," that is, whether a finding of guilt for armed robbery requires a finding of guilt for murder under the doctrine of felony murder. *Id.* at 540.

*Childs* does not sweep as broadly as Emerson claims; other Illinois decisions make clear that Illinois would uphold the sentence under the circumstances of this case. For example, in *People v. Pulliam*, 680 N.E.2d 343 (Ill. 1997), which cites *Childs*, the jury asked the judge what it should do if it could not reach a unanimous decision. The Illinois Supreme Court endorsed the trial court's decision to refer the jury to its original instructions

because "the instructions given to the jury concerning unanimity were readily understandable and sufficiently explained the relevant law." *Id.* at 355. Likewise, in *People v. McDonald*, 660 N.E.2d 832 (Ill. 1995), which also cites *Childs*, the jury asked the judge about the definition of "mitigating factors." The Illinois Supreme Court again upheld the judge's reference to its original instructions, concluding, "[g]iven the clarity and sufficiency of the instruction on mitigation, defendant suffered no prejudice when the trial judge referred the jurors to that instruction." *Id.* at 850. Finally, in *People v. Reid*, 554 N.E.2d 174 (Ill. 1990), the jury asked whether it could find the defendant guilty of one charged crime but not the other. The Illinois Supreme Court upheld the judge's failure to respond: "It is apparent the [trial] court concluded that the instructions sufficiently apprised the jury of the applicable law. Thus, under the circumstances, the [trial] court did not abuse its discretion by referring the jury to the written instructions." *Id.* at 180.

Here, the jury was specifically instructed that it must find that "[t]he murdered person was actually killed by [Emerson]." Such an instruction is "readily understandable and sufficiently explain[s] the relevant law." *Childs*, 636 N.E.2d at 539; *see also Kuntu*, 752 N.E.2d at 397. Accordingly, it was not unreasonable for the Illinois Appellate Court to conclude that Emerson could not show prejudice under *Strickland* even if his counsel had pre-

served his *Childs* argument.[5]

AFFIRMED.

---

[5] Emerson's *Childs* argument in effect posits that a counsel's failure to object is per se ineffective whenever a state appellate court *might* have reversed on direct appeal had the attorney preserved the argument. This theory creates an anomalous result under *Strickland* and AEDPA because petitioners would face a more lenient standard on habeas review than they faced on direct or postconviction review. Take this case as an example. Had his attorney preserved the argument, Emerson would have obtained resentencing on direct review in state court only by prevailing under *Childs*. On habeas review, under Emerson's theory, he should obtain resentencing whenever there is a *chance* that he could have prevailed under *Childs*. This cannot be correct. Moreover, Emerson's theory would create a perverse incentive for counsel not to object so that either way his client would take advantage of a more lenient standard on habeas review. Because we conclude that the Illinois Appellate Court did not unreasonably apply *Strickland*'s prejudice prong, we need not reach this issue, but simply note the anomaly that Emerson's sweeping proposition would create.

---