In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2110

JULIAN LOPEZ,

*Petitioner-Appellant,*

*v.*

MICHAEL THURMER,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-00999—**Charles N. Clevert, Jr.**, *Chief Judge.*

ARGUED MARCH 31, 2009—DECIDED FEBRUARY 5, 2010

Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* A Wisconsin jury convicted Julian Lopez of first-degree intentional murder as a party to a crime. *See* WIS. STAT. §§ 940.01(1)(a), 939.05. Lopez claims that his trial counsel provided ineffective assistance by failing to request, or even discuss with him, a jury instruction on the lesser-included offense of felony murder. After exhausting his state post-conviction remedies, Lopez filed a petition for a writ of habeas

corpus. *See* 28 U.S.C. § 2254. The district court denied his petition but issued a certificate of appealability. The state post-conviction court did not unreasonably apply clearly established federal law to the facts of Lopez's case, so we affirm the district court's judgment.

## I.

At trial, the state presented evidence that Lopez shot Khaled Jilani five times at close range. A police officer testified that she was on patrol when she saw a car, later determined to be Jilani's, ignore a stop sign. The officer then saw two men flee the car, one of whom was carrying a gun. She pursued and eventually apprehended the man with the gun, who turned out to be Lopez. A forensic pathologist testified that the gun found on Lopez was used to kill Jilani, that gunshot residue was found on Lopez's clothing, and that the gun had been very close to Jilani's head and neck when the five fatal shots were fired. Under Wisconsin law, because the gun was in such close proximity to "vital parts" of Jilani's body when it was fired, a presumption arose that the shooter intended to kill his victim. *See Smith v. State*, 230 N.W.2d 858, 862 (Wis. 1975).

The state presented further evidence connecting Lopez to the killing. Ernesto Lopez, who is Julian's nephew, testified about what Julian had told him regarding the incident. Julian told Ernesto that he and another one of his nephews, Arthur Lopez, entered Jilani's car to collect a drug debt; they were wearing masks and began to pistol-whip Jilani. But Julian accidentally uttered Arthur's

name during the attack, which alerted Jilani to the identity of his assailants, so Julian shot and killed Jilani. Luis Acevedo also testified about what Julian had told him regarding the incident. Julian told Acevedo that he and Arthur entered Jilani's car on the night of the killing, again in disguise to collect on the drug debt. In the version of the story Julian told Acevedo, however, it was Arthur who shot and killed Jilani after Jilani saw through Arthur's disguise and uttered his name. Both Acevedo and Ernesto had agreed to testify against Julian in exchange for favorable plea agreements with the state on unrelated charges.

Julian testified in his own defense that he had no plans to commit any crime. Instead, he explained, he, Arthur, and Loyd Guzior were driving to get something to eat when Arthur unexpectedly directed Guzior to pull up behind a parked car; Arthur then approached the car and got inside. After five minutes passed, Julian walked up to the car and saw Arthur and Jilani fighting inside. According to Julian, he got inside the car to protect Arthur, and although he tried to bring the scuffle to a nonviolent end, he was not able to prevent Arthur from shooting Jilani. Arthur dropped the gun while fleeing the car, Julian explained, and he grabbed the gun before fleeing himself.

At the jury-instruction conference, Lopez's counsel informed the court that he was not requesting instructions on any lesser-included offenses to first-degree intentional murder. The court asked counsel whether he had discussed requesting instructions on lesser-in-

cluded offenses with Lopez; counsel replied that he had, and Lopez confirmed to the court that he agreed with the decision.

After he was convicted and sentenced to life imprisonment, Lopez filed a motion in state court for post-conviction relief, alleging that counsel's performance was constitutionally deficient because counsel had neither discussed an instruction on the lesser-included offense of felony murder with him nor asked for one from the court. The state trial court denied Lopez's motion, reasoning that because "there was no reasonable basis for acquittal" on the charge of being a party to first-degree murder, the court would not have been required under Wisconsin law to grant counsel's request for a felony-murder instruction even if he had made one. *See State v. Kramar*, 440 N.W.2d 317, 327 (Wis. 1989). After a thorough examination of the evidence, and relying on a slightly different formulation than the trial court, the state appellate court agreed that Lopez was not entitled to a felony-murder instruction under Wisconsin law because "a reasonable jury could have found Julian Lopez guilty of first-degree intentional homicide." *State v. Lopez*, 686 N.W.2d 455 (Wis. Ct. App. 2004). Because Lopez was not entitled to a felony-murder instruction, the court concluded, counsel's failure to request one was not constitutionally deficient. *See State v. Van Straten*, 409 N.W.2d 448, 454-55 (Wis. Ct. App. 1987). The court also observed that "the record belies" Lopez's allegation that counsel never discussed a felony-murder instruction with him, noting in particular the exchange between the court, counsel, and Lopez at the jury-instruction

conference, and refused to grant an evidentiary hearing on the matter. The state supreme court denied review.

Lopez then petitioned for a writ of habeas corpus in federal district court. *See* 28 U.S.C. § 2254. The district court confined its review to the question whether the state appellate court's decision was an "unreasonable application" of *Strickland* to the facts of Lopez's case, *see id.* § 2254(d)(1), and concluded that it was not. The district court ruled that counsel's failure to request a felony-murder instruction was not constitutionally deficient because Lopez was not entitled to the instruction. The district court also reasoned that counsel's alleged failure to discuss a felony-murder instruction with Lopez, even if true, could not be constitutionally deficient, again because Lopez was not entitled to the felony-murder instruction. Finally, the district court concluded that Lopez was not entitled to an evidentiary hearing regarding counsel's alleged failure to discuss a felony-murder instruction with him because the record demonstrated that Lopez was not entitled to the instruction under state law, *see State v. Bentley*, 548 N.W.2d 50, 53 (Wis. 1996), and thus he was not entitled to collateral relief in federal court.

## II.

We review de novo the district court's denial of Lopez's petition for a writ of habeas corpus. *See Lucas v. Montgomery*, 583 F.3d 1028, 1030 (7th Cir. 2009). We may not grant relief unless the state appellate court's adjudication

of Lopez's constitutional claims resulted in a decision that is either (1) contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d); *Lucas*, 583 F.3d at 1030.

Lopez makes two arguments on appeal. He contends that the state appellate court's application of *Strickland* to the facts of his case was unreasonable because the court applied the wrong standard under Wisconsin law to determine whether he was entitled to a felony-murder instruction. *See* 28 U.S.C. § 2254(d)(1). He also contends that the state appellate court's factual determination that counsel had discussed a felony-murder instruction with him was unreasonable in light of the evidence he presented. *See id.* § 2254(d)(2).

Lopez's first argument—that the state appellate court's application of *Strickland* to the facts of his case was unreasonable—cannot overcome a number of hurdles. According to Lopez, the state appellate court applied the wrong standard under Wisconsin law to determine whether he was entitled to a felony-murder instruction: instead of inquiring whether the jury could have found him *guilty* of first-degree intentional murder, he argues, the state appellate court should have inquired whether the jury could have *acquitted* him of first-degree intentional murder. But, as Lopez concedes, we may not grant habeas relief under 28 U.S.C. § 2254 merely because a state court has misinterpreted or misapplied

state law. *Huusko v. Jenkins*, 556 F.3d 633, 637 (7th Cir. 2009). And we will not fault counsel as ineffective for failing to advance a position under state law that the state appellate court said was meritless. *George v. Smith*, 586 F.3d 479, 483-84 (7th Cir. 2009). Because we leave undisturbed the state appellate court's holding that Lopez was not entitled to a felony-murder instruction, its additional ruling that counsel's performance was constitutionally adequate under *Strickland* was reasonable. It is not " 'well outside the boundaries of permissible differences of opinion,' " *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)), to conclude that counsel's performance is constitutionally adequate when he fails to request an instruction that, as a matter of state law, the defendant is not entitled to in the first place.

Lopez attempts to circumvent this conclusion by insisting that he is not asking us to issue a writ of habeas corpus on the ground that the state appellate court misinterpreted or misapplied Wisconsin law. Instead he appears to argue that, because the jury did not receive a felony-murder instruction, he suffered a fundamental miscarriage of justice implicating his federally protected due-process rights. *See Reeves v. Battles*, 272 F.3d 918, 920 (7th Cir. 2001); *Robertson v. Hanks*, 140 F.3d 707, 710 (7th Cir. 1998); *Nichols v. Gagnon*, 710 F.2d 1267, 1269, 1272 (7th Cir. 1983). To succeed on a fundamental-miscarriage-of-justice claim, Lopez must show that, if presented with a felony-murder instruction, a jury would "probably" have acquitted Lopez of being a party to first-degree intentional murder. *See Nichols*, 710 F.2d at 1269.

But this alternative claim gets Lopez no further. An argument that the state trial court's failure to instruct the jury on felony murder amounts to a fundamental miscarriage of justice is not properly before us, for Lopez never presented this theory on state post-conviction review. *See* 28 U.S.C. § 2254(b)(1)(A); *Pole v. Randolph*, 570 F.3d 922, 934-35 (7th Cir. 2009). But Lopez's argument would fail even if we ignored the procedural default because we cannot say on this record that Lopez probably would have been acquitted of first-degree intentional murder. At least one witness testified that Lopez fired a gun in close proximity to vital parts of Jilani's body, thereby creating a presumption of an intentional killing; another witness testified that Lopez aided his nephew in the close-range shooting. Either view amply supports the conviction that Lopez was a party to the crime of first-degree murder. What's more, forensic evidence and eyewitness accounts also placed the gun in Lopez's possession shortly after Jilani was shot. We do not think that the absence of a felony-murder instruction probably resulted in the conviction of an innocent man.

But even if Lopez had been entitled to a felony-murder instruction, we doubt that counsel's decision not to request one would have amounted to constitutionally deficient performance. The decision appears to have been strategic, for Lopez attempted to persuade the jury that he was innocent of any crime. Lopez testified at trial that, on the night Jilani died, he thought he and Arthur were innocently searching for a place to eat; Arthur's scuffle with Jilani came as a complete surprise. A

felony-murder instruction would have been inconsistent with Lopez's story. Of course, the jury did not buy Lopez's uncorroborated account; perhaps looking back it would have been wiser for counsel to press for a conviction on a compromise verdict of felony murder instead. But we will not pick apart counsel's strategic choice "with the benefit of hindsight." *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009). Under the circumstances, counsel's decision to forego the lesser-included instruction, even if Lopez was entitled to it, appears reasonable—and well "within the wide range of professionally competent assistance." *See Strickland v. Washington*, 466 U.S. 668, 690 (1984).

This brings us to Lopez's second claim on appeal—that the state appellate court's factual determination that counsel had discussed a felony-murder instruction with him is unreasonable. But this separate ineffective-assistance theory is also doomed by the state appellate court's holding that Lopez was not entitled to the felony-murder instruction under state law. We do not see how counsel's failure to discuss with Lopez the possibility of requesting a jury instruction that Lopez was not entitled to receive could amount to constitutionally deficient performance, much less how the failure prejudiced Lopez.

AFFIRMED.