In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1818

JIMMY L. POWELL,

*Petitioner-Appellant,*

*v.*

LARRY FUCHS,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:15-cv-00640-NJ — **Nancy Joseph**, *Magistrate Judge.*

ARGUED DECEMBER 9, 2020 — DECIDED JULY 15, 2021

Before WOOD, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Jimmy Powell dealt cocaine. After a drug deal went bad and his customer ended up with life-threatening injuries, he was charged in Wisconsin state court with various crimes, including first-degree reckless injury. A jury found Powell guilty of that crime but acquitted him of two more serious charges. He appealed, contending that a supplemental jury instruction about the reckless injury charge misstated the law and that his counsel was ineffective for

agreeing to it. The state appellate court rejected his arguments, as did the district court when Powell raised them in a petition for a writ of habeas corpus under 28 U.S.C. § 2254.

In this appeal, Powell maintains his claim that his trial counsel was ineffective for approving the supplemental jury instruction, and he argues that the state appellate court unreasonably applied federal law in concluding otherwise. But he offers no clear and convincing evidence to rebut the state appellate court's conclusion that the instruction was an accurate response to a question from the jury. The record also shows that Powell's trial counsel had reasonable and strategic reasons for not objecting, so we affirm.

## I. Background

### A. The Offense

Late one evening in 2009, Robert Rabe contacted Jimmy Powell, his regular dealer, to purchase cocaine. Rabe and his friend, Ryan Ryckman, had been drinking earlier that day and wanted drugs. Powell agreed to meet them and drove to a dimly lit parking lot near Madison, Wisconsin. Rabe and Ryckman arrived in a separate vehicle. Rabe parked his car and got out. Carrying about $900 in cash, Rabe approached Powell's truck and entered on the passenger side. Ryckman waited in Rabe's car.

What happened next is the subject of conflicting evidence, but it is clear that Powell and Rabe got into a fight and they spilled out of Powell's truck. Eventually, Powell jumped back in his truck and with its headlights off sped away, in the process running over Rabe. Ryckman, meanwhile, worried that the deal was taking too long and left Rabe's car to investigate. When Ryckman saw Rabe get run over, he dialed 911 for help.

While Ryckman was on the phone, Powell returned to the scene. His truck's headlights were still off. The evidence again conflicts as to what happened next, but at some point Ryckman and Powell struggled over the phone, and the phone wound up sheared in half. Powell got back in his truck and sped away a second time. When police arrived at the scene, they found a knife on the ground. Rabe had several serious injuries and was bleeding from a deep gash on his neck. He survived, but his cash was never recovered.

### B. The Trial

Powell was arrested a few days later and charged with attempted first-degree intentional homicide, armed robbery, and first-degree reckless injury. The prosecution's theory was that Powell decided to rob Rabe after seeing him with a large amount of cash, tried to kill Rabe when he resisted by slashing his throat with a knife and running him over with a truck, and then returned to the scene to make sure Rabe was dead. Powell responded that the entire incident was an accident. According to Powell, Rabe attacked him first, and Powell accidentally ran him over attempting to retreat. Rabe had been his customer for years, Powell maintained, and it did not make sense for him to want to rob and kill a steady source of income.

The case went to trial and the jury heard from Ryckman and Rabe. Ryckman could not remember much and, because of his vantage point, he did not see how the altercation began. Rabe, meanwhile, said that after he got into the truck Powell pulled a knife on him and demanded cash. Rabe believed that at some point during the ensuing fight, Powell slashed him across the neck with a knife, although Rabe could not remember precisely when.

Both parties called expert witnesses who provided conflicting testimony about how Rabe injured his neck. A pathologist opined the injury was caused by a knife because nothing on Powell's truck could have caused it, but a police officer who specialized in collision reconstruction did not share the pathologist's certainty. Rabe's plastic surgeon believed low-hanging parts on Powell's truck could have inflicted the gash when the truck ran over him. Rabe's emergency room doctor was unsure how Rabe was injured.

Powell testified at trial in his own defense. He denied having a knife during the altercation. After he handed the drugs to Rabe, Powell said, Rabe punched him in the head without any warning. When the fight spilled out of the car, Powell asserted it was Rabe who drew a knife. The two wrestled on the ground, and Powell lost his cellphone in the struggle. Powell managed to break away, jumped into his truck, and, in shock, sped off. Less than a minute later, Powell turned around, realizing that he may have hit Rabe. Back at the parking lot, Powell saw Ryckman on the phone, standing over Rabe. Still in shock, Powell worried about Rabe and wanted to call the police. Believing that Ryckman was using his phone, Powell wrestled for it and fled after the phone broke.

At the close of evidence, the trial court instructed the jury on the elements of first-degree reckless injury using Wisconsin's pattern jury instruction for that crime:

> [T]he State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present:
> First, the defendant endangered the safety of another human being.

> Second, the defendant endangered the safety of another by criminally reckless conduct.
>
> …
>
> Third, the circumstances of the defendant's conduct showed utter disregard for human life. In determining whether the conduct showed utter disregard for human life, you should consider these factors: What the defendant was doing; why the defendant was engaged in that conduct; how dangerous the conduct was; how obvious the danger was; whether the conduct showed any regard for life; and, all other facts and circumstances relating to the conduct.

*See* WISCONSIN JURY INSTRUCTIONS—CRIMINAL 1250 (2002).

During deliberations, the jury asked a question: "Please provide us with a definition of utter disregard for human life. Is there a time element associated with the utter disregard? (before, during, and after)." An off-the-record discussion among the court and counsel produced the following answer:

> Utter disregard for human life has already been provided to you. There is no additional legal guidance on this definition.
>
> In this case, the crime of first-degree reckless injury involves the period of time while Mr. Powell is engaged in conduct related to operating his motor vehicle. It does not include conduct by Mr. Powell after Mr. Rabe had been run over.

On the record, the parties agreed this answer was proper. The court then gave this supplemental instruction to the jury in writing.

The jury acquitted Powell of the two more serious charges against him, but it found him guilty of first-degree reckless injury. Powell was sentenced to 13 years' imprisonment and a 10-year term of extended supervision.

### C. State Postconviction Proceedings

After his conviction, Powell filed a postconviction motion, asserting that the supplemental jury instruction misstated the law and that his counsel was ineffective for agreeing to it. The supplemental instruction prevented the jury from considering the totality of the circumstances when evaluating whether he had acted with utter disregard, Powell contended, so there was no reasonable strategic reason for his counsel to agree to a defective instruction.

In considering Powell's claims, the state trial court held an evidentiary hearing—provided for in *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979)—at which Powell's counsel testified. Counsel remembered the case and recalled that the reckless injury charge encompassed only Powell's actions while he was behind the wheel of his truck. He recalled the jury asked a question about "how to understand the instructions as far as time frame, um, whether that would pertain to the entire incident or just part of the incident." Counsel was "surprised" at the court's answer to the jury's question because he "was sort of expecting the Court to say, um, you know, just look at the entire scenario." But, he explained, he "liked [the answer] because it had the effect of limiting it so the jury wouldn't be able to consider anything outside the

car." When asked about the legal accuracy of the answer to the jury's question, counsel replied:

> I would say that I was very pleased with the answer because I felt it was more limiting than it had to be, and so I felt it benefited Mr. Powell.
>
> …
>
> We're talking about reckless injury here. And certainly after the vehicle was operated, Mr. Rabe suffered a cut from ear to ear, and so I didn't want them to, you know, the jury to deliberate and say, well, you know, because of that injury, I think this charge would be appropriate.
>
> …
>
> And I would just add that, um, also before—before he got in the car, there was also—there was a fist fight. There was a time when it was alleged Mr. Powell had kicked open the door and knocked Mr. Rabe down. So, again, none of that was really, according to the Court's answer, was in play. So that's why I liked it because there were things that happened that injured Mr. Rabe before and after. So if we're limiting it to just the time that Mr. Powell is operating the vehicle, I felt that was the best possible result for Mr. Powell.

Post-Conviction Mot. Hearing Tr. 45–46, ECF No. 15-25.

The state trial court denied Powell's request for postconviction relief, and the Wisconsin Court of Appeals affirmed. Powell had failed to preserve a standalone objection to the

accuracy of the instruction, the state appellate court ruled, because his counsel did not object to it. On Powell's ineffective assistance claim, the state appellate court concluded that the jury was properly instructed on the elements of first-degree reckless injury, and the record made it "readily apparent" that the parties and the trial court understood the jury to be asking for guidance only on what injury-causing conduct was at issue. There was no reason to suppose that the jury questioned whether it could consider all of the circumstances when deciding whether particular conduct was criminally reckless. The trial court's supplemental instruction was therefore an accurate response to the jury's question, the state appellate court concluded, so Powell's claim for ineffective assistance failed.

### D. Federal Habeas Corpus Petition

After the Wisconsin Supreme Court declined to review his case, Powell petitioned the federal court for a writ of habeas corpus under 28 U.S.C. § 2254. Again, he asserted that the supplemental instruction was defective and that his counsel performed deficiently by agreeing to it. The district court stayed the proceedings for several months so Powell could exhaust additional theories of relief in state court.

Eventually the stay was lifted, and the district court denied Powell's petition. First, it concluded that the Wisconsin Court of Appeals correctly identified the Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984), as the governing standard for claims of ineffective assistance. Next, the district court stated that Powell argued persuasively—perhaps better than the Wisconsin Court of Appeals gave him credit for—that the supplemental jury instruction was "misleading, if not actually erroneous." The district court believed that testimony at the postconviction hearing suggested that

Powell's trial counsel may not have shared the trial court's
view that the supplemental jury instruction specified only
what injury-causing conduct the jury was to consider. None-
theless, that same testimony showed that counsel's decision
not to object was strategic, so the state appellate court's con-
clusion that trial counsel was not ineffective was reasonable.
Finally, the district court concluded, Powell had procedurally
defaulted his standalone claim that the jury instruction mis-
stated the law, and his claim of ineffective assistance of coun-
sel did not excuse that default.

Powell appealed, and we granted a certificate of appeala-
bility to consider whether trial counsel performed deficiently
by agreeing to the supplemental jury instruction. We also
asked the parties to brief the reasonableness of the state ap-
pellate court's determination that trial counsel understood
the jury to be asking about what specific *conduct* by Powell
was relevant, rather than what *timeframe* jurors could examine
in identifying and weighing that conduct.

## II. Discussion

We review de novo a district court's denial of a petition
for habeas corpus, "but our inquiry is an otherwise narrow
one." *Schmidt v. Foster*, 911 F.3d 469, 476 (7th Cir. 2018)
(en banc). Under the Antiterrorism and Effective Death Pen-
alty Act, a federal court may not grant habeas relief after a
state-court adjudication on the merits unless that decision
was "contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the
Supreme Court of the United States" or "based on an unrea-
sonable determination of the facts in light of the evidence pre-
sented in the State court proceeding." 28 U.S.C. § 2254(d). We
consider the last reasoned opinion on the claim, *Cal v. Garnett*,

991 F.3d 843, 848 (7th Cir. 2021), which here is from the Wisconsin Court of Appeals.

*Strickland* provides the clearly established federal law governing Powell's ineffective-assistance claim. To prevail, Powell needed to show both that counsel's performance was objectively deficient and that he was prejudiced by it. *Strickland*, 466 U.S. at 687. We are not required to consider these elements in any particular order or even to address both if Powell makes an insufficient showing on one; a failure to satisfy either one defeats his claim. *Felton v. Bartow,* 926 F.3d 451, 463–64 (7th Cir. 2019). Like the district court, we begin with the performance prong. In assessing counsel's performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Under certain circumstances, failure to object to a defective or confusing jury instruction may reflect deficient performance. *Cupp v. Naughten,* 414 U.S. 141, 146–47 (1973); *Baer v. Neal,* 879 F.3d 769, 777–78 (7th Cir. 2018).

Powell maintains that his counsel performed deficiently by agreeing to an instruction that misstated the law. Under Wisconsin law, a jury must consider the totality of the circumstances in evaluating whether the State has proved the utter-disregard element of first-degree reckless injury. *See State v. Burris,* 797 N.W.2d 430, 434 (Wis. 2011). Powell contends that the supplemental jury instruction—which told jurors that "the crime of first-degree reckless injury involve[d] the period of time while Mr. Powell is engaged in conduct related to operating his motor vehicle" but not "conduct by Mr. Powell after Mr. Rabe had been run over"—improperly constrained the jury's understanding of what evidence it could consider.

Relying on our decision in *Cates v. United States*, 882 F.3d 731 (7th Cir. 2018), Powell urges that any failure to object to an erroneous jury instruction amounts to ineffective assistance of counsel.

In *Cates*, this court granted habeas relief to a petitioner convicted of a federal offense after determining that his attorney performed deficiently by failing to object to a defective jury instruction. That instruction expanded the definition of the petitioner's offense beyond the statutory text and our precedential decisions. *Id.* at 733. When a jury instruction so badly misstates the law and that error relaxes the government's burden of proof, this court held that there can be no conceivable strategic reason for counsel not to object. *Id.* at 736.

But as we observed during oral argument here, as a petitioner seeking relief from a state conviction, Powell is not in the same position as the petitioner in *Cates*.[1] The Wisconsin Court of Appeals has already considered and rejected his contention that counsel performed deficiently by agreeing to the instruction, so our review of his claim is "doubly deferential" under the combined standards of *Strickland* and AEDPA. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal citations omitted). To obtain relief, Powell must show that the Wisconsin Court of Appeals applied *Strickland* unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As the Supreme Court has explained, this is different from showing that counsel performed deficiently in the first instance. *Id.* A state appellate court's decision is not "unreasonable" if it is merely incorrect; rather, it must be "so lacking in justification that

---

[1] Oral Argument at 3:00, 6:50.

there was an error well understood and comprehended in ex-
isting law beyond any possibility for fairminded disagree-
ment." *Id.* at 103. Powell faces two additional obstacles: first,
on habeas review we cannot overturn a state-court's conclu-
sions about state law, *Bradshaw v. Richey,* 546 U.S. 74, 76
(2005); second, we presume the state-court's factual findings
are correct unless the petitioner rebuts them with clear and
convincing evidence, 28 U.S.C. § 2254(e)(1); *Winfield v.
Dorethy,* 956 F.3d 442, 452 (7th Cir. 2020).

The Wisconsin Court of Appeals appears to have reasoned
that counsel's performance was adequate because there was
no meritorious objection to the instruction. If that were
plainly the case, then our review of Powell's claim would end
here. *Bradshaw,* 546 U.S. at 76. But the state appellate court's
holding is not completely clear because it also concluded that
Powell had failed to preserve a standalone challenge to the
accuracy of the instruction. That court stated only that the in-
struction responded accurately to the jury's question, which
the parties understood to be asking for guidance on what in-
jury-causing conduct was at issue. The jury received accurate
instructions about reckless injury before it began delibera-
tions, so the state appellate court saw no reason to suppose
that the jury questioned whether it could consider the totality
of the circumstances when deciding whether particular con-
duct was criminally reckless.

On that score, Powell attacks as unreasonable the state ap-
pellate court's determination that the parties understood the
jury's question to concern what injury-causing conduct was
at issue, rather than what timeframe it was permitted to con-
sider. That determination neither fits with the question the
jury actually asked nor does it account for the question's

context, he submits. So the state appellate court's conclusion that the trial court responded accurately cannot be correct. To Powell, his counsel's testimony at the postconviction hearing shows that his counsel knew the jury was confused about "utter disregard" and that counsel himself believed the jury asked about timeframe, not conduct. Thus, he sees counsel's "surprise" over the trial court's answer as confirmation that it was inaccurate and confusing.

But Powell fails to provide the "clear and convincing" evidence necessary for us to disturb the state appeals court's conclusion that the supplemental instruction responded accurately to the jury's question. 28 U.S.C. § 2254(e)(1). We agree with him that the trial court and the parties understood, in some respect, the jury to be asking about timeframe. Yet Powell's understanding of what came next—that his counsel intentionally agreed to an instruction that misstated the law and compounded the jury's confusion—does not persuade us as clearly correct. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Powell's parsing of his counsel's postconviction testimony shows that there is more than one way to interpret his counsel's actions. Powell offers one possible interpretation: that his counsel knew the instruction misstated the law, and he agreed to it because he thought he could exploit the jury's confusion. But Powell's interpretation is devoid of the context that he faults the state appellate court for not considering. *Cf. Baer*, 879 F.3d at 778. As noted during oral argument in this court, there are other possible

interpretations.[2] It is equally plausible that Powell's counsel believed the instruction clarified the injury-causing conduct in the charge and focused the jury's attention on it.

If "reasonable minds reviewing the record might disagree about the finding in question," the finding cannot be unreasonable. *Brumfield v. Cain,* 576 U.S. 305, 314 (2015) (internal citations omitted). Here, before concluding that the instruction responded accurately to the question, the Wisconsin Court of Appeals properly analyzed the jury's question and the trial court's response against the rest of the instructions and the trial record. *Waddington v. Sarausad,* 555 U.S. 179, 191 (2009); *see also Baer,* 879 F.3d at 778. Given the conflicting evidence presented at trial about the events before and after Rabe was run over, the state appellate court concluded that the instruction provided appropriate guidance to the jury on what injury-causing conduct was at issue. That conclusion finds support in the record. Indeed, in closing arguments, counsel maintained that Rabe started the fight and argued that Powell's actions in the truck showed nothing more than fear for his own life. In rebuttal, the State emphasized evidence suggesting that Rabe's throat had been cut by a knife in arguing that Powell's conduct was criminally reckless.

Recall, too, that before deliberating the jury was properly instructed on the utter-disregard element. The instruction Powell challenges "may not be judged in artificial isolation." *Waddington,* 555 U.S at 191 (internal citations omitted). In addition to clarifying that the "crime" did not involve Powell's conduct after Rabe had been run over, the court's response

---

[2] Oral Argument at 3:00, 6:50.

explained that there was "no additional legal guidance" about utter disregard and referred the jury back to the original pattern instruction. *Emerson v. Shaw*, 575 F.3d 680, 685 (7th Cir. 2009) ("As long as the original instructions accurately and understandably state the law, referring a jury back to those instructions can be the most prudent course."). And Powell does not dispute that the trial court told the jury to consider the totality of the circumstances in its original instruction:

> In determining whether the conduct showed utter disregard for human life, you should consider these factors: *What the defendant was doing; why the defendant was engaged in that conduct; how dangerous the conduct was; how obvious the danger was; whether the conduct showed any regard for life;* and, *all other facts and circumstances relating to the conduct.* (emphasis added.)

Nonetheless, Powell contends, the supplemental instruction conflicted with the original instruction. He emphasizes that his defense depended on his fear of Rabe's continuing attack and his possession of a knife during their altercation. Because the original instruction was legally correct, he argues, the supplemental instruction served only to limit what evidence the jury believed it could consider and thus removed potentially mitigating facts—such as Rabe's initial act of aggression—from the jury's evaluation. So, Powell contends, counsel's agreement to the instruction was tantamount to abandoning the defense; there could be no reasonable strategic reason for failing to object. But because the court only clarified what the "crime" was after expressly referring the jury back to the original instruction on utter disregard, we cannot

conclude that the two instructions conflict—especially under our deferential standard of review.

Though the Wisconsin Court of Appeals did not expressly state it believed counsel's decision was strategic, we readily conclude that court reasonably applied *Strickland* in denying Powell's claim. *Harrington,* 562 U.S. at 105. Powell has not established that the supplemental instruction misstated the law, and he faces an uphill battle in showing that counsel performed deficiently by agreeing to a set of accurate instructions. *Emerson,* 575 F.3d at 685; *see also Burris v. Smith,* 819 F.3d 1037, 1042 (7th Cir. 2016) (observing that a similar instruction may have helped, rather than hurt, a petitioner facing the same charge). Generally, when an attorney articulates a strategic reason for a decision, and the decision was sound at the time it was made, the court defers to that choice. *Strickland,* 466 U.S. at 690; *United States v. Cieslowski,* 410 F.3d 353, 360 (7th Cir. 2005).

The record here shows that Powell's trial counsel had sound reasons for agreeing to the supplemental jury instruction. In addition to the first-degree reckless injury charge, Powell faced counts of attempted first-degree intentional homicide and robbery. The prosecution's theory was that Powell tried to rob Rabe, tried to kill him when he resisted, and then returned to the scene to make sure he was dead. Powell's counsel argued that the entire incident was an accident caused by a first incident of aggression by Rabe. To succeed, Powell needed to refute the State's contentions that he had intended to kill Rabe—either by slashing his throat or by running him over with his truck—and contend with the evidence that Rabe had suffered serious injuries. Though Powell asserted that Rabe started the fight, the evidence on that point

conflicted, and the jury was not required to believe his account over Rabe's.

Powell's counsel testified that given these circumstances, he believed the supplemental jury instruction would help his client because it focused the jury's attention on the injury-causing conduct. The instruction clarified, for example, that the jury should not convict Powell of reckless injury based on the altercation outside of his truck or his actions when he returned to the scene. It also removed from the jury's consideration negative inferences it could have drawn from evidence suggesting that Rabe's throat was slashed with a knife, thereby minimizing the chance that the jury would convict Powell based on the severity of Rabe's injuries. When viewed in the context of the entire record, counsel's decision not to object is the sort of strategic choice to which deference is owed under *Strickland.* It was not, as Powell suggests, equivalent to abandoning a defense. *Cf. United States ex rel. Barnard v. Lane,* 819 F.2d 798, 805 (7th Cir. 1987) (withholding instructions that would have enabled jury to convict petitioner of lesser offense was deficient performance in capital case).

### III.  Conclusion

Powell's trial counsel's performance was not objectively deficient. Having so concluded, we need not reach the prejudice prong of Powell's claim. *Felton,* 926 F.3d at 463–64. For these reasons, the district court's denial of Powell's habeas petition is AFFIRMED.