In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1933

FREDRICK MICHAEL BAER,

*Petitioner-Appellant,*

*v.*

RON NEAL, Superintendent, Indiana State Prison,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-1168 — **Sarah Evans Barker,** *Judge.*

ARGUED FEBRUARY 22, 2017 — DECIDED JANUARY 11, 2018

Before, BAUER, FLAUM and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Fredrick Michael Baer murdered a young woman and her four-year-old daughter in their home. In connection with this crime, he was convicted in Marion Superior Court of the two murders, robbery, theft and attempted rape. He was sentenced to death. He filed a direct appeal to the Indiana Supreme Court raising several issues including prosecutorial misconduct, but his convictions and death sentence were affirmed. Baer filed state post-conviction

proceedings alleging that his trial and appellate counsel were ineffective. The court denied his petition and this denial was affirmed by the Indiana Supreme Court. Baer then filed a petition for a writ of habeas corpus with the United States District Court for the Southern District of Indiana, which was also denied. After we issued a certificate of appealability, Baer appealed the district court's denial of his petition for a writ of habeas corpus.

Baer asserts that the Indiana Supreme Court's ruling was unreasonable under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to find that Baer's trial counsel was constitutionally ineffective for failing to (1) object to improper and confusing jury instructions given at the penalty phase of his trial, (2) object to prejudicial prosecutorial statements made throughout trial, and (3) investigate and present mitigating evidence on Baer's behalf. While we affirm his convictions, we agree with Baer that, at the penalty phase, Baer's counsel failed to challenge crucial misleading jury instructions and a pattern of prosecutorial misconduct, and that the state court unreasonably applied *Strickland* in denying Baer relief. Counsel's deficiency resulted in a denial of due process, and we find the errors were sufficient to undermine confidence in the outcome of Baer's penalty trial and so we find prejudice. While Baer's offenses were despicable and his guilt is clear, he is entitled to a penalty trial untainted by constitutional error.

## I. BACKGROUND

### A. Factual History

On February 25, 2004, Fredrick Michael Baer saw twenty-four-year-old Cory Clark on her front porch. He turned his

car around and pulled into her driveway. He approached Cory's apartment, knocked, and asked to use her phone to call his boss. When she turned to go back inside, he followed her into her apartment with the intent to rape her. After attacking her, Baer decided against raping her because he feared contracting a disease so instead he cut Cory's throat with a foldable hunting knife. Witnessing this atrocity, Cory's four-year-old daughter, Jenna Clark, ran from the room. Baer caught her and cut her throat. Taking Cory's purse, three to four hundred dollars, and some decorative stones, Baer then left the apartment. He cleaned himself up, changed his shirt, and returned to work. When he was arrested as a suspect and police asked if he committed the murders, Baer shook his head affirmatively and told the officers the location of the knife and purse.

### B. Procedural History

Early on, Baer conceded that he murdered the Clarks, and sought to plead guilty but mentally ill (GBMI).[1] The trial court rejected the plea, finding that there was insufficient evidence to show mental illness. The case proceeded to trial with the only issue being whether Baer was GBMI or simply guilty.

Voir dire began. In front of jurors and prospective jurors, the prosecutor persistently began stating the incorrect standard for a GBMI conviction. The prosecutor routinely suggested (incorrectly) that the GBMI standard and legal insanity

---

[1] In Indiana cases where the defense of insanity is raised, the jury may find that the defendant is: (1) guilty; (2) not guilty; (3) not responsible by reason of insanity at the time of the crime; or (4) guilty but mentally ill at the time of the crime. Ind. Code § 35-36-2-3. A defendant who is found or pleads guilty but mentally ill should be sentenced in the same manner as a defendant found guilty of the offense. Ind. Code § 35-36-2-5(a).

standard were the same. He encouraged jurors to recite this incorrect standard in response to his questioning. The prosecutor also made statements suggesting that life without parole may be abolished and incorrectly stated that a GBMI conviction might not permit a death sentence. Baer's counsel did not object to any of these statements. The prosecutor also told jurors that the victims' family wanted Baer to be put to death. Toward the end of jury selection, during a bench conference, defense counsel asked for a mistrial for the prosecutor's comments mentioning the victims' family (referring to them as "victim impact" comments). The judge remarked that he was not paying attention, denied defense counsel's motion, and suggested the prosecutor tell jurors that he had misspoken. No objection or clarification was made in front of the jury.

After jury selection, Baer's trial began, and the defense focused on convincing the jury that Baer suffered from a mental illness. Defense counsel offered an expert witness, Dr. George Parker, who testified that Baer had a history of drug issues, including methamphetamine use. He also diagnosed Baer as suffering from a psychotic disorder. The court also provided appointed experts, Dr. Larry Davis and Dr. Richard Lawler, who agreed that Baer suffered from mental illness, and also cited Baer's abuse of methamphetamine as something that would disturb his mental wellness and exacerbate his mental health problems. Dr. Davis testified that Baer was likely experiencing psychosis induced by heavy methamphetamine use at the time of the crime. Dr. Lawler described Baer's account that he used methamphetamine on the morning of the crimes. The experts' account of Baer's use of methamphetamine on the day of the crime was contradicted by Danny Trovig, the friend Baer reportedly used methamphetamine with that morning, who testified that Trovig was on parole at the time

and did not consume or see Baer consume methamphetamine.

The prosecutor also offered a toxicology expert, Dr. Michael A. Evans, who testified that a blood sample collected from Baer 38 hours after the offense and tested 13 months after collection showed some marijuana usage, but tested "absolutely zero" for methamphetamine or any other drug. However, because of the delay in the blood draw and the testing of the blood, Dr. Evans could not conclude that Baer had not used any methamphetamine on the morning of the crime. At post-conviction proceedings, Dr. Evans clarified that he could not say whether methamphetamine existed in Baer's blood at the time it was collected, but he could only confirm that there was no such substance in his blood when it was tested.

The prosecution also presented evidence to counter whether Baer had a mental illness, and sought to prove that Baer instead was lying about his mental health. This evidence included playing a portion of a telephone conversation recorded while Baer was incarcerated in which Baer told his sister, "[o]h, yeah, and while we're at it to boot, here let's go ahead and say you're stupid and insane so it will make it a little easier. I don't think so. Matter of fact, I ain't got to worry about that 'cause I'm ready to go out here to the f*cking doctor, tell this stupid son of a bitch a bunch of stupid lies."

At the close of evidence, the jury convicted Baer of murdering Cory and Jenna Clark, robbery, theft, and attempted

rape without a finding of GBMI. The case then proceeded with the same jury to a penalty trial.

At the penalty phase, Baer's counsel offered one witness, Dr. Mark Cunningham. In approximately seven hours of testimony, Dr. Cunningham discussed Baer's prenatal and perinatal difficulties, including his mother having cancer while pregnant, drinking while pregnant, and Baer's malnourishment for the first several months of his life. Dr. Cunningham also testified about Baer's family troubles such as Baer's childhood in and out of foster care and the murder of his sister. Dr. Cunningham also stated that Baer had poor school performance and struggled with ADHD, head injuries, and extensive abuse of inhalants, alcohol, methamphetamine, and other substances. Dr. Cunningham reported that Baer was "extraordinarily damaged." However, while questioning Dr. Cunningham to show mitigating circumstances, Baer's counsel failed to ask Dr. Cunningham whether Baer met the definition of having a mental illness.

The jury found that the state had proved all five of the alleged aggravating circumstances in Baer's crime (all which were uncontested), (1) murder while committing the crime of attempted rape, (2) murder while committing the crime of robbery, (3) murder of two human beings, (4) committing two murders while on parole, and (5) murder of a child under the age of twelve years. Finding that mitigating factors did not outweigh these aggravating factors, the jury recommended

the death penalty. On June 9, 2005, the court sentenced Baer to death.

### C.  Appellate History

Baer filed a direct appeal of his death sentence to the Indiana Supreme Court, raising four issues: (1) prosecutorial misconduct, (2) failure to comply with proper procedures in handling prospective jurors, (3) erroneous admission of recorded telephone calls from jail, and (4) inappropriateness of the death sentence. On May 22, 2005, the Indiana Supreme Court affirmed Baer's convictions and death sentence. *Baer v. State*, 866 N.E.2d 752 (Ind. 2007) (*"Baer I"*). The state court discussed at length its holding that the prosecution did not commit misconduct by suggesting that a GBMI conviction may not support a death sentence. *Id.* at 755–61. The court also held that the death penalty was supported by the evidence of the brutal nature of the killings and the lack of evidence of Baer's positive character. *Id.* at 764–66. Baer filed a petition for writ of certiorari, which was denied. *Baer v. Indiana*, 552 U.S. 1313 (2008).

Baer filed a petition for post-conviction relief on May 1, 2008, raising numerous allegations that trial counsel and appellate counsel were ineffective, including challenging trial counsel's failure to object to jury instructions and prejudicial prosecutorial statements. Baer's post-conviction counsel also raised prosecutorial misconduct, structural errors in the trial judge's rejection of Baer's GBMI plea and failure to correct the prosecutorial errors, cruel and unusual punishment based on Indiana's method of execution, and a challenge to Baer's death sentence based on his mental illness. At an evidentiary hearing, Baer presented the testimony of several witnesses to

bolster his claim for mitigation, including a neuropsychologist, Baer's mother, Baer's juvenile probation officer, a former teacher, and former wife Zola Brown. After hearing this additional testimony, the court denied Baer's petition for relief. The court found Baer's prosecutorial misconduct, structural error, and method of execution claims were foreclosed because he had not raised them at trial or on direct appeal. The court rejected Baer's ineffective assistance of trial and appellate counsel claims on the merits, and found that the evidence about mental illness failed to undermine confidence in the verdict or sentence.

The Indiana Supreme Court affirmed the denial of post-conviction relief, holding, in part, that Baer's trial counsel and appellate counsel were not ineffective. *See Baer v. State*, 942 N.E.2d 80, 90–108 (Ind. 2011) ("*Baer II*"). The Indiana Supreme Court specifically addressed the merits of, and rejected, Baer's claims that counsel was ineffective for failing to challenge jury instructions relating to intoxication, failing to present a claim for prosecutorial misconduct, and failing to investigate or present adequate mitigating evidence. *Id.* at 97, 98, 102–03, 107.

On November 29, 2011, Baer filed his petition for a writ of habeas corpus in the United States District Court for the Southern District of Indiana. He again challenged trial and appellate counsel's effectiveness regarding the penalty phase jury instructions, for failing to challenge the prosecutor's comments, and for failing to investigate and present mitigating circumstances. The court denied Baer's petition and his motion to alter or amend the judgment, and declined to grant his request for a certificate of appealability. *Baer v. Wilson*, No. 1:11-cv-1168, 2014 WL 7272772, at *27 (S.D. Ind., Dec. 18,

2014). In its order, the district court ruled that the Indiana Supreme Court did not unreasonably apply *Strickland* when finding that Baer's counsel's performance was not deficient during voir dire or for failing to object to penalty phase jury instructions.

We granted a certificate of appealability and agreed to hear Baer's arguments that he had ineffective assistance of counsel. Baer presents three arguments under this theory: (1) counsel was ineffective for failing to object to penalty phase jury instructions that were likely interpreted to preclude the jury from considering central mitigating evidence; (2) counsel was ineffective for failing to object to numerous instances of prosecutorial misconduct; and (3) counsel was ineffective for failing to investigate and present evidence to prove mitigating factors that were described by medical experts. Our analysis of the first two arguments are determinative of the issue before us, so we decline to reach the third argument.

## II. ANALYSIS

Baer appeals from the denial of habeas relief under 28 U.S.C. § 2254. Because his Sixth Amendment claims were adjudicated on the merits by the Indiana Supreme Court, they are subject to 28 U.S.C. § 2254(d), commonly referred to as the Anti-Terrorism and Effective Death Penalty Act (AEDPA). AEDPA permits a federal court to issue a writ of habeas corpus only if the state court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C.

§ 2254(d)(2). Needless to say, the AEDPA standard of review is a difficult standard, and it was meant to be.

Baer seeks relief for the alleged denial of his Sixth Amendment right to effective assistance of counsel. This claim is analyzed under *Strickland*, 466 U.S. 668, which requires a petitioner to show two things. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *see also Ward v. Neal*, 835 F.3d 698, 702 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2161 (2017). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; there must be a possibility of prejudice that is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 693, 694.

Because we are under AEDPA review of a *Strickland* claim, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This is a difficult standard, and even a strong case for relief under *Strickland* does not necessarily mean the state court's contrary conclusion was unreasonable. *Id* at 102. But this is not an insurmountable standard. The writ of habeas corpus, as limited by AEDPA, is more than a dead letter. "The writ of habeas corpus stands as a safeguard … of those held in violation of the law." *Id.* at 91. The writ's purpose is to provide a "guard against extreme malfunctions

in the state criminal justice systems." *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment). AEDPA "directs federal courts to attend every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law." *Williams*, 529 U.S. at 389. "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's cus-tody—or, as in this case, his sentence of death—violates the Constitution, that independent judgment should prevail." *Id.*

### A. Failure to Object to Penalty Phase Instructions

#### 1. Challenged Instructions

At the penalty phase of the capital trial, after Baer had been convicted of his crimes, defense counsel's strategy for avoiding a death sentence was ensuring that the jury consid-ered and gave effect to Baer's mental health and intoxication (use of methamphetamine) evidence. During this penalty phase, the jury was instructed that the following was to be considered a mitigating factor:

> Defendant's capacity to appreciate the criminality of the defendant's conduct or to conform that conduct to the requirements of the law was substantially impaired as a result of mental disease or defect.

The language of this instruction came from a statutory mitigating factor provision, Indiana Code 35-50-2-9(c)(6), with one major difference. As given in Baer's penalty phase trial, this statutory jury instruction was modified to exclude the final words "or of intoxication." The complete Indiana Code 35-50-2-9(c)(6) reads:

Defendant's capacity to appreciate the criminality of the defendant's conduct or to conform that conduct to the requirements of the law was substantially impaired as a result of mental disease or defect *or of intoxication*.

(emphasis added). Baer's counsel did not object to the modification of this statutory jury instruction.

After the court instructed on aggravating and mitigating factors, near the end of the penalty phase jury instructions, the following instruction was given:

Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of [Indiana Code] 35-41-3-5.

[Indiana Code] 35-41-3-5: It is a defense that the person who engaged in the prohibited conduct did so while intoxicated, only if the intoxication resulted from the introduction of a substance into his body: (1) without consent; or (2) when he did not know the substance might cause intoxication.

Baer's counsel did not object to this "voluntary intoxication" instruction as it was given at the penalty phase trial.

### 2.  Failure to Object to Instructions Ineffective

"[T]he Eighth and Fourteenth Amendments require that the sentencer … not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v.*

*Ohio*, 438 U.S. 586, 604 (1978) (emphasis in original). Therefore, defense counsel in a death penalty case will fall deficient where he fails to object to removal of a mitigating factor from jurors' consideration. *See id.* Baer argues that is precisely what happened here.

The Indiana Supreme Court separately evaluated defense counsel's failure to object to the modification of Indiana's statutory mitigating factor (removal of the words "or of intoxication" from Indiana Code 30-50-2-9(c)(6)) and inclusion of a "voluntary intoxication" instruction. Analyzing the modified mitigating factor instruction, the state court found that the trial judge could have believed that Baer failed to prove that he was intoxicated during the offense, and therefore the intoxication language in the mitigating factors was unnecessary. *Baer II*, 942 N.E.2d at 97. It also found that "[g]iven the link between ongoing methamphetamine usage and mental illness that repeatedly arose in expert testimony, the jury had an adequate opportunity to hear and act on this evidence even with the omission of 'or of intoxication' from the jury instruction." *Id.* at 107.

Separately, the state court concluded that defense counsel was not ineffective in failing to object to the voluntary intoxication instruction because it was a "correct statement of law and was relevant to determining whether Baer committed his crimes intentionally." *Id.* at 97 (internal emphasis omitted). Furthermore, the state court also determined that because the trial court told jurors they could consider "[a]ny … circumstances" in mitigation and that "there are no limits on what factors an individual juror may find as mitigating," jurors were instructed they could consider intoxication for purposes of mitigation.

In our view, it was unreasonable for the state court to an-
alyze Baer's challenges to the jury instructions in isolation. *See*
*Boyde v. California*, 494 U.S. 370, 378 (1990) (jury instructions
"may not be judged in artificial isolation, but must be viewed
in the context of the overall charge"). Further, "[t]he question
… is not what the State Supreme Court declares the meaning
of the charge to be, but rather what a reasonable juror could
have understood the charge as meaning." *Francis v. Franklin*,
471 U.S. 307, 315–316 (1985). Here, a reasonable juror could
have understood the complete penalty phase jury instructions
as foreclosing evidence of voluntary intoxication from consid-
eration for all purposes in sentencing, including barring vol-
untary intoxication as mitigating evidence.

Examining defense counsel's failure to object to jury in-
structions in the context of the entire charge illuminates the
unreasonableness of the state court's rejection of Baer's first
*Strickland* claim. First, the state court found that the trial court
could have rejected Baer's counsel's request for adding the
language "or of intoxication" to the statutory mitigation fac-
tor "because the evidence showed that Baer was not intoxi-
cated at the time of the offense." *Baer* II, 942 N.E.2d at 97. Even
on its own, this finding was clearly incorrect. The evidence of
Baer's intoxication at the time of the crime was disputed, but
there was evidence that he had used methamphetamine on
the day of the crime and there was certainly ample evidence
that the long-term effects of intoxication exacerbated Baer's
psychosis and affected his capacity to conform his behavior.
Two experts, Drs. Davis and Lawler, both testified that Baer's
drug use at the time of the crime likely impacted his behavior.
This evidence was rebutted by Danny Trovig's testimony that
he did not use methamphetamine with Baer on the morning

of the crime and expert Dr. Evans's testimony that it was un-
clear whether Baer's blood contained any methamphetamine
at the time of the crime. It was the jury's task to resolve the
factual dispute. It would have been plainly erroneous for the
trial judge to weigh the evidence in favor of the prosecution
and determine that Baer was not intoxicated at the time of the
crime. Therefore, this reason cited by the Indiana Supreme
Court for finding that defense counsel's failure to object was
not ineffective was unreasonable.

The state court also found that Baer's counsel was not in-
effective because "the link between ongoing methampheta-
mine usage and mental illness … repeatedly arose in expert
testimony," and the close tie between Baer's mental health ev-
idence and intoxication gave the jury an "adequate oppor-
tunity to hear and act on this evidence even with the omission
of 'or of intoxication' from the jury instruction." *Id.* at 107.
However, this fails to consider the jury instructions as a
whole. At the end of the instructional charge, the trial court
expressly told jurors they could *not* consider intoxication un-
less it was involuntary. In light of the voluntary intoxication
instruction, reasonable jurors would not have believed they
could consider intoxication evidence as it related to Baer's
mental health. Instead, it is likely jurors heeded the trial
court's charge and refused to consider voluntary intoxication
at all, including mental health evidence stemming from Baer's
voluntary drug use. It is unreasonable to assume jurors could
catch the nuance that voluntary intoxication can be consid-
ered for mitigation, but not as evidence of criminal intent,
without any clear instruction. Here, the instructions relating
to mitigation did not mention the word "intoxication," as they
should have under the statute. In fact, the only instruction ad-

dressing intoxication rendered Baer's use of methamphetamine and other drugs out of bounds for consideration for any purpose. The modification of the statutory mitigating factor worked in conjunction with the voluntary intoxication instruction to effectively exclude consideration of key mitigating evidence. Therefore, defense counsel's failure to object was constitutionally deficient.

Looking at the voluntary intoxication instruction, the state court reasoned that counsel was not ineffective for failing to object because it "was a correct statement of the law and was relevant in determining whether Baer *committed his crimes intentionally*." *Id.* at 97 (emphasis in original). Alone, this statement might seem reasonable, but in context, it is not. First of all, the challenged voluntary intoxication instruction was given at the penalty phase trial—*after* Baer had been convicted of intentionally committing his crimes. Intent was not challenged before the jury at the penalty phase; it was decided at the guilt phase. So, it is unlikely the jury understood that this instruction, given again at the penalty phase, was applicable only to the decided issue of intent. A reasonable juror would have understood this instruction as excluding evidence of voluntary intoxication for purposes of punishment, specifically excluding voluntary intoxication as a mitigating factor.

Further, while this instruction was a correct statement of law, it was likely that the jurors' interpretation of this instruction was not legally correct. Jurors were unlikely to decipher that the voluntary intoxication instruction related only to proof of aggravating factors (which were not disputed by the defense) and did not plainly exclude voluntary intoxication evidence for all purposes, including in mitigation of sentencing. In fact, the jury had been primed to believe that

voluntary intoxication could not impact sentencing. The prosecutor even told jurors in his closing argument that "self-induced drugs is[sic] no protection from law … we don't give anybody a pass who takes drugs on their own and then uses it as … some effort to make their sentence a little easier."

Furthermore, the voluntary intoxication instruction was not read with the aggravating factor instructions. This instruction was given at the end of the charge, well after aggravating and mitigating factor instructions, and soon before the jurors recessed to make a decision. There was no instruction or clarity provided that this instruction related only to proof of the aggravating factors, and the jury likely (and incorrectly) interpreted the instructions as a specific preclusion from considering Baer's voluntary drug use in deciding a just punishment. There was no reason for this instruction to be given at the penalty phase where the aggravating factors were not in dispute, and less so at the end of a lengthy instructional charge. So, Baer's trial counsel was ineffective for failing to object, and the state court unreasonably found otherwise.

Finally, the state court concluded that any instructional error which may have inhibited consideration of Baer's intoxication by the voluntary intoxication instruction was cured by the court's instructions that there were "no limits on what factors an individual juror may find as mitigating," and Indiana's general instruction that "[a]ny … other circumstances"

may be considered as mitigating.[2] *Id*. Looking at the state court's finding in light of the entire charge, we again find the state court's analysis unreasonable. While the "any other circumstance" and "no limits" instructions contradicted the instruction excluding voluntary intoxication evidence, the contradiction did not provide clarity. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Francis*, 471 U.S. at 322. Further, the general mitigation instructions were given earlier and separately from the voluntary intoxication instruction, making it unclear from the charge whether "any other circumstances" excluded voluntary intoxication. We are left with "no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Id*. Therefore, we find that the state court's conclusion that the trial court's broad and generic mitigating instructions cured the faulty instructions was not reasonable. Trial counsel's failure to object was deficient.

Prejudice is found where "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694. Here, evidence of Baer's intoxication by methamphetamine use at the time of the offense, as well as his voluntary drug use for a large period of his life, was central mitigating evidence that the jurors should have

---

[2] The full "any other circumstances" instruction read: "any other circumstances, which includes the defendant's age, character, education, environment, mental state, life and background or any aspect of the offense itself and his involvement in it which any individual juror believes makes him less deserving of the punishment of death." (Tr. 2570–71.)

considered. *See, e.g., Cone v. Bell*, 556 U.S. 449, 474–475 (2009) (finding that suppressed evidence of prior drug use may have been material to the jury's assessment of the proper punishment in a death penalty case, and finding a review of such evidence was warranted). Evidence of Baer's mental health and drug use were intertwined as the cornerstone of Baer's defense, and defense counsel's sole strategy for avoiding a death sentence was ensuring that the jury considered and gave effect to Baer's mental health and intoxication evidence. Yet, Baer's trial counsel failed to object to instructions that effectively blocked consideration of this crucial mitigating evidence. We find "there [was] a reasonable likelihood that the jury has applied the challenged instruction[s] in a way that prevent[ed] the consideration of constitutionally relevant evidence," *Boyde*, 494 U.S. at 380, and the mitigation evidence left unconsidered was central to Baer's claim for a penalty less than death. It was unreasonable for the state court to conclude otherwise.

## B. Failure to Object to Prejudicial Prosecutorial Comments

While we need only find one reversible error to grant Baer's claim for habeas relief, we continue to consider Baer's second claim to address the troubling story of prosecutorial misconduct found in the transcript of this case. Baer asserts that his trial counsel was deficient for failing to object to Madison County Prosecutor Rodney Cummings's repeated improper and prejudicial comments. Our review of the record demonstrates a pattern of prosecutorial misbehavior that Baer's counsel deficiently failed to challenge. The refrain of prejudicial comments that went unaddressed by defense

counsel or the trial court invited doubt into the reliability of Baer's penalty phase trial.

In evaluating prosecutorial misconduct under governing Supreme Court law, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation omitted). We examine whether a prosecutor's comments were improper and whether in light of the entire record the defendant was denied a fair trial. *See United States v. Bowman*, 353 F.3d 546, 550 (7th Cir. 2003). In conducting this inquiry, we consider several factors, including the nature and seriousness of the misconduct; whether the comments were invited by the defense; the extent to which the remarks may have been neutralized by the court's instructions to the jury; the defense's opportunity to counter any prejudice; and the weight of the evidence supporting the conviction. *Id.*

Baer challenges the following categories of comments by the prosecutor and argues that they should have generated objections by his attorneys at trial and on direct appeal: (1) prosecutor's misrepresentation of the law regarding the insanity defense and a guilty but mentally ill verdict; (2) prosecutor's false claim that no Indiana case authorizes the death penalty following a guilty but mentally ill verdict; (3) prosecutor's false claim that the legislature was about to abolish life without parole; (4) prosecutor's improper references to victim impact statements; (5) prosecutor's comments disparaging Baer, his counsel and his experts; and (6) prosecutor's use of personal opinion and facts not in evidence. We discuss only those categories in which we find the prosecutor's comments

were most offensive and where Baer's counsel's failure to object was deficient. We look at comments made throughout the record and analyze the cumulative prejudice stemming from trial counsel's persistent failure to object.

### 1. Prosecutor's Misrepresentation of GBMI Law

Baer first argues that his trial counsel was deficient for failing to object to the prosecutor's consistent conflation of the standards of a legal insanity defense and guilty but mentally ill (GBMI). These comments were injected at the earliest phase of proceedings, voir dire. Baer asserts that the state court's finding that trial counsel's failure to object was a strategic decision (and therefore not deficient) was an unreasonable application of *Strickland*, and we agree.

There is a clear legal difference between a jury's finding of "not responsible by reason of insanity at the time of the crime," Ind. Code § 35-36-2-3(3), and "guilty but mentally ill at the time of the crime," Ind. Code § 35-36-2-3(4). To be found legally insane, a defendant must suffer from "a severely abnormal mental condition that grossly and demonstrably impairs [his] perception," and renders him "unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind. Code. 35-41-3-6. On the other hand, a verdict of GBMI is appropriate if a defendant suffers from an illness that "disturbs [his] thinking, feeling, or behavior and impairs [his] ability to function." Ind. Code 35-36-1-1. Another important distinction between an insanity defense and a GBMI conviction is that the latter has no effect on the defendant's conviction or sentence. Ind. Code 35-36-2-5(a). In a capital case, a jury may consider mental illness as a mitigating circumstance at the penalty phase trial, but it is not a defense to intent nor is it a defense to guilt.

In this case, Baer's counsel sought a guilty but mentally ill (GBMI) verdict.[3] He made clear that he was not seeking the insanity defense. However, from the earliest stages of voir dire, the prosecutor, Mr. Cummings, misstated the legal standard of a GBMI verdict and conflated it with an insanity defense. This confusion continued from voir dire and into the prosecutor's closing statements.

In an early exchange at voir dire, Cummings led the following line of questioning in front of jurors and prospective jurors:

> Mr. Cummings: What do you think of this psychological evidence? Have a mental disease or defect so you should find me guilty but mentally ill?
>
> Mr. Davis: I never really give it much thought on that.
>
> Mr. Cummings: Do you think someone who can appreciate the wrongfulness of their conduct and knew what they were doing was wrong is guilty?
>
> Mr. Davis: I figure, you know … I look at he had the [sic] know he was doing it.
>
> Mr. Cummings: … then that's not someone that should get a pass.
>
> Mr. Davis: Yeah.
>
> Mr. Cummings: Or not somebody who you should find guilty but mentally ill?

---

[3] Under Indiana law, Baer could not legally seek a GBMI verdict without having filed a notice of intent to raise the defense of insanity. Ind. Code § 35-36-2-3(4) (2008).

Mr. Davis: Yes.

(Tr. 469.)

Similar lines of questioning persisted throughout voir dire. Cummings also incorrectly suggested that a GBMI verdict was a defense or an excuse, and mental illness could only be considered (even as mitigation) if Baer did not know right from wrong. For example:

Mr. Cummings: They don't want him put to death, and if he's found guilty but mentally ill, it will be more difficult for the State of Indiana to execute [him].

Ms. Brumbaugh: Yes.

Mr. Cummings: And what are the kinds of things you think you should look at before you decide whether he is guilty but mentally ill?

Ms. Brumbaugh: If he knew it was right or wrong

Mr. Cummings: He could appreciate the wrongfulness. You are right on top of it. I mean I'm feeling good already. You understand the issues.

(Tr. 494.)

Mr. Cummings: [referencing the facts of Baer's case] Is that the kind of crime someone should be executed for?

Mr. Brown:[4] Yes, I believe that could be a circumstance, unless there are mitigating circumstances.

Mr. Cummings: Okay and what … what do you mean by mitigating circumstances?

---

[4] Mr. Brown served as the jury foreperson. DA App. 1503–05.

Mr. Brown: Not having the ability to know right from wrong …

Mr. Cummings: Okay.

Mr. Brown: at the time the crime occurred.

Tr. 769.

In Cummings's closing argument, he reiterated to the jury that "[m]ental illness. Well, that's what you do when you have to admit you did it, but I got some excuse." In his rebuttal argument, he again told the jury that mental illness "did not cause [Baer] to do it, it did not keep him from understanding what he was doing was wrong; and, if that's the evidence, you should not find him guilty but mentally ill." Defense counsel did not object to these statements.

The Indiana Supreme Court found no ineffectiveness of Baer's counsel in failing to object to the prosecutor's inaccurate and misleading conflations of GBMI and legal insanity. The court noted that "during *voir dire* the prosecutor did often conflate the separate concept of GBMI and insanity by referring to whether Baer could appreciate the wrongfulness of his actions," but it held:

> It seems likely that defense counsel consciously chose not to object to the prosecutor's misstatements as part of their general strategy of letting the prosecutor discredit himself. At PCR, [Defense Counsel] Williams testified that he had known Prosecutor Cummings for years and knew he was capable of overstating his case to the jury. Trial counsel planned to correctly state the law to the jury when it was their turn, have the judge echo their statement through the jury instructions, and

hope the jury would decide from the contrast that the prosecutor was not credible.

*Baer II*, 942 N.E.2d at 99–100 (internal record cites omitted).

We cannot agree with the state court's analysis, nor do we find it reasonable. Under *Strickland* a strategy must be reasonable. *See Campbell v. Reardon*, 780 F.3d 752, 763–64 (7th Cir. 2015). Planning to state the law correctly and "hop[ing] the jury would decide … that the prosecutor was not credible," *Baer II*, 942 N.E.2d at 100, cannot be considered "strategic" here, where the prosecutor was never discredited and defense counsel's failure to object simply conceded to the prosecutor's confusing and prejudicial remarks, which put his client's life at risk. Case law does not mandate deference to unreasonable defense tactics. *See Strickland*, 466 U.S. at 681.

Further, the confusion created between GBMI and the insanity defense was never clarified. At the end of his closing argument, defense counsel stated "for the hundredth time: We are not saying that Fredrick Michael Baer is insane. I said it to you in jury selection. [Defense Counsel] Lockwood said it to you. I've said it to you repeatedly … Mental disease or defect." But, the difference between the GBMI standard and the insanity standard remained murky. To the extent defense counsel tried to clarify, it was the prosecutor's word versus defense counsel's word. Furthermore, the court did not instruct on the difference between GBMI standard and the insanity defense standard, and defense counsel requested no such instruction. Under these circumstances, the state court's finding that trial counsel was not deficient was unreasonable.

### 2.  Comments Regarding Victim Impact

Also during voir dire, the prosecutor told potential jurors that the victim's family wanted Baer to be given the death penalty. Prosecutor Cummings told the jury:

> [Y]our [sic] the ones sitting here in this seat who have this man's life in their hand and they have to be the one who makes a decision. I know he should be executed but I don't want to be the one that has to do that. If everyone felt that way, then this family is not gonna receive justice that the law entitles them to.

(Tr. 379.) He also stated:

> It's not just the life. It's the family that was left behind … who no longer have a wife and a four-year-old child and you're gonna see those people in the courtroom throughout this entire trial and they're here seeking justice and the[y] believe that's the death penalty.

(Tr. 405.) Again, he told prospective jurors

> It's serious for everyone and it's serious for the community to receive justice for a person who commits a crime like this in our community. For this man and for his family and for the man and the child who survives these horrible crimes. They're going to want justice don't you think?

(Tr. 766.) After yet another mention of the victim's family, Baer's trial counsel asked for a bench conference, in the following sequence:

> Mr. Cummings: But you are going to be standing in for the people of our community, and they're going to ask you to take this very seriously. Not just because of him,

and it's very important for our system to take this very seriously, but what about you know the husband and the other child, or the woman and her child that were murdered and their family and everyone in the community. Justice …

Mr. Williams: Your Honor may we approach?

[*At bench conference*:]

Mr. Williams: Judge, he's come close a few times … He's come close a few times, Judge, to Mr. Cummings arguing victim impact. Now we're there. Because of that, we're asking for a mistrial. Indiana law is clear that you cannot argue victim impact. During the situation like this, he's come close a few times.

Judge: I got to tell you the truth, I wasn't listening to what Rodney said. I don't know about it in terms of jury selection. You can argue victim impact in the trial, but I don't know about jury selection, but you're risking …

Mr. Williams: The record is clear … well, I want the record to be clear that we're asking for a mistrial at this point based upon he's come close a few times, but now say you need to consider the impact on the husband, the other child, that is victim … that is nothing but a victim impact argument. Because of that, we're asking for a mistrial.

Judge: I don't think it's a mistrial, but you need to clean it up and say I misspoke. I the Judge instructs you, you will follow the instructions.

(Tr. 801–02.) No "clean up" was made, though the prosecutor

generally adhered to the judge's warning and stopped referring to the victims' family's desired punishment. However, at closing of the penalty phase, the prosecutor again argued, "We would not be here if that's not what the Clarks wanted." Again, Baer's trial counsel did not object. Baer now argues that his trial counsel's persistent failure to object constituted deficient performance. We agree.

In *Payne v. Tennessee*, 501 U.S. 808, 830 n.2 (1991), the Supreme Court held that the Eighth Amendment does not require a complete ban on victim evidence, but upheld that "admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment."[5] *See also Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (per curiam). Cummings's comments here, informing the jury what the victims' family thought the appropriate penalty was for "justice" were therefore made in violation of the law. The law permits some forms of "victim impact evidence" in both Indiana and federal law, but the statements made by the prosecutor here, made without support and well before the jury was to consider an appropriate penalty, were not permissible. *See Payne*, 501 U.S. at 809 (holding that a state may conclude that a jury should have access to properly admitted victim impact evidence at the sentencing phase); *see also Bivins*, 642 N.E.2d at 955–57 (holding

---

[5] Baer incorrectly argues that victim impact evidence is *per se* inadmissible, citing *Booth v. Maryland*, 482 U.S. 496 (1987) and *Bivins v. State*, 642 N.E.2d 928 (Ind. 1994). He relies heavily on the Supreme Court's analysis in *Booth*, and quotes that victim impact statements "can serve no other purpose than to inflame the jury and divert it from deciding the case on any relevant evidence concerning the crime and the defendant." 482 U.S at 508. However, *Booth* was modified, and greatly limited, by *Payne,* 501 U.S. 808.

victim impact evidence is inadmissible in Indiana unless it is relevant to an issue properly before the court). Cummings's comments were made without any admissible evidence and were made well before the penalty phase. His assertions that the Clark family wanted the death penalty were highly objectionable and could not be considered properly admitted evidence. Yet, trial counsel failed to object.

The Indiana Supreme Court acknowledged that the prosecutor's comments were problematic. In addressing Baer's arguments for ineffective assistance of counsel and the prosecutor's victim impact statements the state court found "[i]nappropriate though these comments may have been, we do not think they rendered Baer's trial fundamentally unfair." *Baer II*, 942 N.E.2d at 102. We agree that Cummings's remarks were inappropriate. It follows that defense counsel's failure to object to these improper statements on the record was deficient. The state court also concluded, "[t]he prosecutor then told the jury he misspoke. This is the sort of rebuke to the prosecutor that the defense counsel likely found helpful." *Id*. This finding is not supported by the record. In fact, Cummings never told the jury he misspoke and no "rebuke" was given. Accordingly, no follow up statement by the prosecutor or the judge remedied the prosecutor's victim impact comments or alleviated defense counsel's deficiency for failing to make an objection before the jury.

As to the state court's conclusory statement that prosecutorial comments regarding the victims' family's desired punishment did not render Baer's trial fundamentally unfair, we cannot consider these statements in isolation. While these comments alone might not have rendered Baer's trial fundamentally unfair, they constituted a piece of a broader pattern

of problematic prosecutorial comments. We also note that the trial judge's comment ("I got to tell you the truth, I wasn't listening to what Rodney said.") exposes another issue that seems to have infected Baer's trial. The record reflects that the trial judge missed numerous opportunities to stop or clarify the prosecutor's statements and his absence was noticeable throughout trial.

### 3. Personal Opinions & Facts Not in Evidence

Baer argues that from early in the trial Prosecutor Cummings also began a pattern of introducing facts not in evidence, which directed jurors toward a recommendation of the death penalty. This included introducing insecurity in life without parole sentences. For example, in voir dire, Cummings addressed questions about whether or not life without parole may result in probation or release:

> Mr. Cummings: The state of the Law in Indiana right now is life without parole means life without parole … That does not mean it's not going to chance [sic]. Hardly a year doesn't go by where there isn't a bill in the legislature that is … that wants to change the law and allow parole at some point after so many years. No one in this room is not going to be able to tell you that's not going to change. What they're going to do is ask you to do is at least consider something other than life without parole, other than the death penalty, and you should consider it.

Tr. 920. There is nothing in the record that supported Cummings's statement that: "Hardly a year doesn't go by where there isn't a bill in the legislature that is … that wants to change the law and allow parole at some point after so many

years." The law in Indiana was clear that life without parole does not permit parole, ever. There was no reason for speculation about the future of the law.

Later, at the penalty phase of Baer's trial, Cummings made multiple comments in closing argument that Baer now maintains were prejudicial, and to which he contends his counsel should have objected. Specifically, Cummings stated:

> [i]n my career in law enforcement in this community, we have had at least one hundred and twenty-five murders … of those … no murder even comes close to the murders committed by Fredrick Michael Baer. Not even among the three men who have been sentenced to death.

He continued, commenting that:

> The depravity, the horror, I would challenge you to think, have you ever heard of a murder you've heard in the news or seen in the news that was more heinous and more deserving of the death penalty than this case. You might say 9/11 because of the 3,000 or so people that died there. Maybe the Oklahoma City bombing because of the numbers. But think about the violence, the horrific nature of this crime …

(Tr. 2513–14.)

Cummings then recounted the murders in graphic detail and told the jury that Baer was using "the abuse excuse," and that Cummings's childhood was worse than Baer's childhood:

> My mother is not here. She was a prostitute who died of a drug overdose. I got convicted of a felony when I

was eighteen and spent time in jail, and I had a worse childhood than he did. Maybe that's why I say, "Suck it up." If you lived in this community, you would know that because people back there already know it. I had a tougher childhood than he did, and I somehow managed to become a lawyer and got elected prosecutor in this community three times now. And me and some other people who overcome tough circumstances like that get sick to our stomach when people like that sit around and cry about how tough they had it …

(Tr. 2548–49.)

Finally, Cummings urged the jury to vote for the death penalty to justify the money that was being spent on the trial:

We are not anxious to file the death penalty … the cost is unbelievable. Who knows what it's going to cost our community. Probably a half a million dollars. We've got people laid off. It's not something you do haphazardly. It's something you do to seek justice in a community.

(Tr. 2551.)

Baer argues now, and argued before the state court, that these arguments went unchallenged by his trial counsel and were not cogently argued on appeal, which demonstrates his counsel's professional deficiency. The state court rejected Baer's claim, and determined that the prosecutor's arguments were unobjectionable because defense counsel introduced the topics. *Baer II*, 942 N.E.2d at 102.

Defense counsel did mention that Baer's crime wasn't the "worst of the worst," that they had positive childhood upbringings that put them in a better position to make good

choices than Baer, and that the death penalty was an unnecessary financial burden on the state. However, just because defense counsel cracked open the door to these subjects, it did not permit the prosecutor to drive a truck through it. The seditious and specific comments about the prosecutor's own mother, the community's layoffs, and 9/11 were all not hard blows, but beyond the pale foul ones. *See United States v. Young*, 470 U.S. 1, 7 (1985). "The kind of advocacy shown by this record has no place in the administration of justice and should neither be permitted nor rewarded." *Id*. at 9. The unsupported details about Prosecutor Cummings's personal history were unnecessarily provocative and highly improper. We find it was unreasonable for Baer's trial counsel not to object.

### 4. Cumulative Prejudice

The Indiana Supreme Court held that, after analyzing each of Baer's raised challenges to his counsel's performance, that the prosecutor's comments "did not affect the outcome of Baer's trial." *Baer II*, 942 N.E.2d at 103. We find that the Indiana Supreme Court's conclusion was unreasonable under *Strickland* because the state court failed to analyze the aggregate prejudice of Prosecutor Cummings's improper comments, and looking at the cumulative effect of these comments it was unreasonable to conclude that Baer's case did not suffer prejudice. The prosecutor's misleading and problematic statements were consistent and extensive, so finding prejudice is not "one of several equally plausible outcomes," but it is nearly impossible that the comments did not impact the juror's decision to recommend the death penalty. *See Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997) ("Congress would not have used the word 'unreasonable' if it really

meant that federal courts were to defer in all cases to the state court's decision."); *see also Martin v. Grosshans*, 424 F.3d 588, 591 (7th Cir. 2005).

Under Indiana law, an ineffective assistance of counsel claim can be dismissed easily upon the prejudice prong and the court may do so without addressing whether counsel's performance was deficient. *See Baer II*, 942 N.E.2d at 91 (citing *Wentz v. State*, 766 N.E.2d 351 (Ind. 2002)). The Indiana Supreme Court based its rejection of Baer's ineffective assistance of counsel claims largely on Baer's alleged failure to show prejudice. *Id*. So, the reasonableness of the state court's holding on prejudice is the heart of its denial of Baer's claims.

"The well-settled standard of review [is] that we are to consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole, to determine if such conduct was 'so inflammatory and prejudicial to the defendant … as to deprive him of a fair trial.'" *United States v. Chaimson*, 760 F.2d 798, 809 (7th Cir. 1985) (quoting *United States v. Zylstra*, 713 F.2d 1332, 1339 (7th Cir. 1983)). The state court stated simply that it reviewed prejudice "taken in the aggregate." *Baer II*, 942 N.E.2d at 102. But, analysis of the opinion does not support its conclusion. While the state court underwent a lengthy analysis on several of the categories of prosecutorial misstatements for Baer's counsel's deficiency, there was no analysis on the cumulative impact of all of these comments. Instead, the state court's pithy analysis on prejudice states only that "these comments did not affect the outcome of Baer's trial." *Id*. at 103. There was no further reasoning or explanation.

Cummings's misstatements were prolific and harmful to Baer's case, yet Baer's trial counsel failed to object at every

opportunity. Cummings's comments began in voir dire, where his comments conditioned jurors to believe that Baer was a liar, that mental illness was a "copout" and "defense," that Baer should not receive a GBMI conviction because he appreciated the wrongfulness of his actions (improperly using the insanity defense standard), life without parole was at a high risk of providing release, and the Clark family wanted a death sentence. All these comments were made before the jury heard any evidence in Baer's case. Then, at the close of the penalty phase, Cummings again injected inflammatory comments and facts not in evidence, including remarks about Cummings's mother's prostitution, people being laid off to afford the state's pursuit of the death penalty, and Baer's crime being worse than any of the prior 125 murders Cummings had heard of in his career in law enforcement. Each of these comments made by Cummings carried the weight and authority of the state.

Like the state court, we cannot say with surety that had Cummings refrained from injecting inflammatory, incorrect, and unsupported statements into this trial, Baer would not be on death row. We acknowledge that this is not a case where the defendant is sympathetic or a case where the defendant's guilt is uncertain. This makes finding prejudice less intuitive. But, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. The standard for prejudice is "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The taint of the prosecutor's comments here infected the entire trial, and erodes confidence in the outcome of this case.

The state court was unreasonable to determine otherwise. The cumulative effect of the prosecutor's remarks likely hampered the jurors' ability to decide dispassionately whether Baer should receive a term of years or life without parole rather than a death sentence, or to even trust that life without parole would remain a barrier to Baer's reentry into society. Further, suggesting that Baer might serve less than the entirety of his life in prison if sentenced to life without parole, as Cummings did by saying legislation was proposed almost yearly to permit release, provided the jury with the belief that Baer could be released on parole if he were not executed. "To the extent this misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing [him] to death and sentencing him to a limited period of incarceration." *Simmons v. South Carolina*, 512 U.S. 154, 161–62, 164 (1994) (plurality opinion) (reversing death sentence and remanding for further proceedings because this "grievous misperception" "cannot be reconciled with our well-established precedents interpreting the Due Process Clause").

Can we be certain that Baer would not have been sentenced to death if given a fair trial and effective counsel? No. But, it is "reasonably likely" that without the prosecutor's injection of impermissible statements and incorrect law the jurors would not have recommended death. *See Strickland*, 466 U.S. at 696 ("[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would *reasonably likely* have been different absent the errors." (emphasis added)). Our confidence in the outcome of Baer's sentencing proceedings was undermined by the prejudicial prosecutorial comments throughout Baer's

trial. Because Baer's counsel failed to object to these comments, and to the misleading jury instructions, Baer was denied a fair trial and was prejudiced by his counsel's unprofessional errors.

### III. CONCLUSION

We REVERSE the district court's denial of Baer's petition for a writ of habeas corpus with regard to the penalty phase of the trial. Baer's convictions stand.